## MACK COPPER CO. et al. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
June 4, 1928.

No. 5390.

**Fixtures** ⊜⟶35(1)—Where lessor prevented removal by government as lessee of property after lease terminated, government could sue in equity to adjudicate its rights.

Where lease to government of land for cantonment purposes provided that government could remove buildings and improvements placed on land at termination of lease, and lessor prevented removal after termination, government could maintain suit in equity to have adjudication of its rights, and for assistance in its efforts to remove property, consisting of railroad track, etc., where lessor was insolvent, and remedy at law was at least uncertain.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Paul J. McCormick, Judge.

Suit by the United States against the Mack Copper Company and others. From the decree, defendants appeal. Affirmed.

William H. Wylie and Edgar E. Hendee, both of San Diego, Cal. (John W. Clifton, of Washington, D. C., and A. C. Routhe, of Los Angeles, Cal., of counsel), for appellants.

Samuel W. McNabb, U. S. Atty., and John R. Layng, Asst. U. S. Atty., both of Los Angeles, Cal.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

DIETRICH, Circuit Judge. The question involved is one of jurisdiction in equity. In 1917 the government by lease obtained possession for cantonment purposes of certain lands near San Diego, Cal., belonging to the Mack Copper Company, and by it mortgaged to the Sam Ferry Smith Company. Acting under this lease and others of like character upon adjacent tracts, it established there what came to be known as Camp Kearney. By its terms the lease ran for the period from June 1, 1917, to May 31, 1922, and among other things it provided that if, during the stipulated period, the government should abandon the use of the land for cantonment purposes, it should terminate, and further that "upon the expiration of the term of this lease, or any sooner termination thereof, the right is reserved to remove or cause to be removed any and all buildings and improvements that may be placed upon said land, either by the United States of America or any one on its behalf or for its use."

In November, 1921, the use of the tract for such purpose was abandoned and the Copper Company resumed possession. On September 23, 1922, the government contracted with one Weissbaum for the purchase and removal within 90 days of all the remaining buildings and improvements it had placed upon the lands. Weissbaum attempted to carry out the contract, but was prevented from so doing by the Copper Company, which challenged the government's claim of ownership and of right to remove, and the latter brought this suit in equity, on August 4, 1923, to have an adjudication of its rights, and for assistance in its efforts to remove the property and to appropriate it to its own purposes. In the

meantime, claiming ownership, the Copper Company had entered into a contract with one Morgan for the purchase and removal of the improvements and the rehabilitation of the premises, and hence he, as well as the mortgagee, was joined as a codefendant. Upon a trial there was an interlocutory decree adjudicating the controlling issues favorably to the plaintiff, and referring the case to a master for an accounting in respect of such improvements as defendant had appropriated, and for other purposes.

The evidence is not brought up, and the one question argued is whether the complaint states a case cognizable in equity. We are of the opinion it does. The property in question consists of 3½ miles of railroad track, together with considerable quantities of railroad ties and numerous other accessories; a telephone and telegraph line, with poles and wires and other equipment; 250 electric light lamps on poles; more than eight miles of metal and two miles of wood pipe, with numerous fire hydrants, gate valves, and other equipment, constituting a water system; a large quantity of reinforcing steel incorporated in a septic tank; and other small items too numerous to mention.

The controlling consideration undoubtedly is whether the plaintiff has a plain, speedy, and adequate remedy at law. An action for damages would be fruitless, if, as the complaint alleges, the Copper Company is insolvent. Ordinarily, it is true, one who claims property in the possession of an adverse claimant may not maintain a suit to quiet title, for the reason that an action in ejectment or replevin furnishes the requisite remedy. But here the title to the land is in the Copper Company, with admitted right of possession, subject only to such easement, if any, as the government may have to enter thereon for the purpose of removing the improvements. Nor, when we bear in mind the character of the property, and the fact that the major part of it is attached to the soil, do we think replevin an adequate or practicable remedy. Particularly is this true when we consider the claims of the mortgagee and of Morgan under his contract, which are of an equitable character and must be adjudicated, if the government is to have complete relief. To protect all parties, the court must be in the position, not only to adjudicate title and right of possession, but, if those issues are disposed of favorably to the plaintiff, to direct the manner in which the removal shall be made, and to define the extent to which the plaintiff may invade the Copper Company's possessory and other rights in the land for that purpose. We have difficulty in seeing how this could be done in an action at law, and to say the least such a remedy is uncertain.

Such being our view of the underlying question, it becomes unnecessary to consider whether, by their prayer for affirmative relief, defendants waived their jurisdictional objection.

Affirmed.